STATE OF NORTH CAROLINA v. MONZIE LEROY HARPER

No. 856SC1234

(Filed 5 August 1986)

**1. Automobiles and Other Vehicles § 126.2— driving while impaired—two breathalyzer tests—admissible**

The trial court did not err in a prosecution for driving while impaired by admitting testimony from which the jury could deduce that defendant was administered two breathalyzer tests or by admitting a breathalyzer checklist that revealed two identical alcohol concentrations where both breathalyzer test results were 0.12; defendant did not object or move to strike prior testimony that a sequential breathalyzer test was administered to him; defendant made only a general objection to the breathalyzer checklist and did not bring to the court's attention that the checklist revealed the results of a test;

State v. Harper

and defendant did not show how the outcome would differ if the checklist had not been published to the jury. N.C.G.S. § 15A-1443(a), N.C.G.S. § 20-139.1 (b3)(3).

**2. Criminal Law § 75.10— driving while impaired—waiver of rights—voluntarily made**

The trial court did not err in a prosecution for driving while impaired by finding that defendant's statements to a highway patrol trooper were knowingly, understandingly and voluntarily made after he had waived his right to silence and his right to counsel where the trooper testified that defendant was apprised of his *Miranda* rights; that after being apprised of his rights defendant understood that anything he said could be used against him; that defendant's mental faculties were only slightly impaired; that in his opinion, defendant was capable of understanding what was said to him; that when defendant was asked whether he wished to waive his right to have an attorney present and answer questions, defendant answered responsively by advising that he did not want a lawyer present; and that defendant waived his rights.

**3. Automobiles and Other Vehicles § 130— driving while impaired—limited driving privilege denied—no error**

Defendant's argument that the trial court denied him a limited driving privilege because he exercised his right to a jury trial was not supported by his exception in the record where there was no ruling of record made by the court to which defendant could except; moreover, the revocation of a license to operate a motor vehicle is not part of nor within the limits of punishment to be fixed by the court wherein a defendant is tried.

APPEAL by defendant from *Stephens, Judge.* Judgment entered 30 May 1985 in Superior Court, HALIFAX County. Heard in the Court of Appeals 10 April 1986.

On 20 January 1985, Trooper C. J. Carmon of the North Carolina Highway Patrol, while on patrol on N.C. 561 in Halifax County, observed an oncoming vehicle cross the centerline of the road. Once the oncoming vehicle passed, Trooper Carmon looked in his rearview mirror and observed the vehicle cross the centerline again. Trooper Carmon gave pursuit and stopped the vehicle. Defendant Monzie Leroy Harper was the driver of the vehicle. Trooper Carmon detected an odor of alcohol about the person of defendant and observed that defendant's eyes were reddish and appeared glassy. Defendant was placed under arrest and transported by Trooper Carmon to the Halifax jail. Sergeant John Wood informed defendant both orally and in writing of his rights prescribed in G.S. 20-16.2. After an observation period of fifteen (15) minutes defendant was asked to perform three (3) physical tests: (1) the one-leg stand test, (2) the heel-to-toe test, and (3) the

finger-to-toe test. Defendant was informed of his *Miranda* rights and Sergeant Wood administered two (2) breathalyzer tests to defendant. The two breath samples obtained from defendant contained identical record alcohol concentrations of 0.12. On 1 May 1985, in Halifax County District Court, defendant was convicted of impaired driving. Defendant was given a sixty (60) day suspended sentence, placed on unsupervised probation for one (1) year, and fined $100.00. The District Court also ordered that defendant pay court costs; that defendant participate in forty-eight (48) hours of community service; and that defendant successfully complete the Alcohol and Drug Education Traffic School (ADETS). Defendant appealed to Superior Court for a trial de novo. On 28 May 1985, defendant's trial began. The jury found defendant guilty of impaired driving and guilty of failing to operate his motor vehicle upon the right side of the highway. Upon defendant's impaired driving conviction the court imposed a level four (4) punishment: defendant was given an active prison sentence of forty-eight (48) hours, a suspended 120 day sentence with a two (2) year supervised probation, a $250.00 fine, ordered to complete ADETS, and ordered to perform forty-eight (48) hours of community service. The court fined defendant $10.00 for failing to operate his motor vehicle upon the right half of the highway. Defendant appeals.

*Attorney General Lacy H. Thornburg, by Special Deputy Attorney General Isaac T. Avery, for the State.*

*Hux, Livermon & Armstrong, by James S. Livermon, Jr., for defendant appellant.*

JOHNSON, Judge.

Defendant did not present any argument or authority in support of his first Assignment of Error; therefore, it is deemed abandoned. Rule 28(a), N.C. Rules App. P.

[1] Defendant's second and fourth Assignments of Error pertain to evidentiary rulings of the trial court, whereby defendant contends the trial court committed prejudicial error. Due to the interrelation of Assignments of Error two and four, we shall review them together accordingly. By his second Assignment of Error defendant contends he was prejudiced when the trial court allowed testimony from which the jury could deduce that defendant

was administered two breathalyzer tests. By his fourth Assignment of Error defendant contends that he was prejudiced by the introduction into evidence of a breathalyzer checklist which revealed that the two breathalyzer tests administered to him resulted in identical record alcohol concentration readings of 0.12.

G.S. 15A-1443 contains the codification of the definition of prejudice in North Carolina. In pertinent part G.S. 15A-1443 states the following:

> (a) A defendant is prejudiced by errors relating to rights arising other than under the constitution of the United States when there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial out of which the appeal arises. *The burden of showing such prejudice under this subsection is upon the defendant.* Prejudice also exists in any instance in which it is deemed to exist as a matter of law or error is deemed reversible per se.

G.S. 15A-1443(a) (emphasis supplied). The General Assembly, by enactment of G.S. 20-139.1(b3)(3), restricts the State from seeking to introduce into evidence the higher of two chemical analyses as proof of a defendant's alcohol concentration. We agree with defendant's assertion that G.S. 20-139.1(b3)(3) protects him from a conviction based on the higher of two breathalyzer test results. However, we do not think that it was prejudicial for the court to allow testimony that two breathalyzer tests were administered to this defendant. This is particularly true in the case *sub judice*, since both breathalyzer test results were 0.12. Moreover, defendant did not object or move to strike prior testimony that a sequential breathalyzer test was administered to him. Therefore, defendant waived any objection he may have to the chemical analyst's testimony with respect to the number of tests administered to him. *State v. Black,* 308 N.C. 736, 303 S.E. 2d 804 (1983).

Defendant made a general objection when the State sought to publish to the jury, *inter alia,* a breathalyzer checklist that revealed two identical 0.12 record alcohol concentrations. Defendant did not bring to the court's attention that the checklist revealed the results of both tests. Moreover, defendant has not carried his burden of showing how the outcome would differ if the

checklist had not been published to the jury. G.S. 15A-1443. Accordingly, defendant's fourth Assignment of Error is overruled.

[2] Defendant next argues that the court erred in finding that his statements to Trooper Carmon were knowingly, understandingly and voluntarily made after he had waived his right to silence and right to counsel. Once a defendant objects to the admission of a confession into evidence it is incumbent upon the trial court to make findings of fact and conclusions of law. *State v. Chamberlain*, 307 N.C. 130, 297 S.E. 2d 540 (1982). Findings of fact made by the trial court, when supported by competent evidence, are conclusive on appeal. *State v. Booker*, 306 N.C. 302, 293 S.E. 2d 78 (1980).

The State must affirmatively show that defendant was fully informed of his rights and voluntarily waived them. *State v. Biggs*, 289 N.C. 522, 223 S.E. 2d 371 (1976). The burden is on the State to prove the voluntariness of a confession by the preponderance of the evidence. *State v. Johnson*, 304 N.C. 680, 285 S.E. 2d 792 (1981). An explicit statement of a waiver is not always necessary to support a finding that defendant waived his right to counsel or the right to remain silent as guaranteed by *Miranda v. Arizona*, 384 U.S. 436, 16 L.Ed. 2d 694, 86 S.Ct. 1602 (1966). *North Carolina v. Butler*, 441 U.S. 369, 60 L.Ed. 2d 286, 99 S.Ct. 1755 (1979). The voluntariness of a waiver is to be determined by "the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused." *Johnson v. Zerbst*, 304 U.S. 458, 464, 82 L.Ed. 1461, 1466, 58 S.Ct. 1019, 1023 (1938).

The trial court, upon defendant's objection, allowed voir dire and entered appropriate findings and conclusions. The trial court found as fact that prior to interrogation defendant was advised of his constitutional rights against self-incrimination; that defendant acknowledged to Trooper Carmon that he understood each right as previously read and explained; that thereafter defendant voluntarily made a statement and answered questions posed by Trooper Carmon; that defendant at no time requested the right to remain silent or requested the presence of counsel or requested that counsel be appointed or requested that any interrogation cease; that defendant appeared to Trooper Carmon to have a slight impairment of his normal faculties to understand the

nature of the warnings and to intelligently waive his rights; that defendant by his words and conduct, after acknowledging that he understood all of his constitutional rights, waived those rights by voluntarily answering questions posed by Trooper Carmon; and that defendant was not threatened, promised or coerced in any manner during this interview and his statements were knowingly, understandingly and voluntarily made. Based upon its findings the court found an implied waiver under *State v. Connley*, 297 N.C. 584, 256 S.E. 2d 234 (1974), and concluded as a matter of law that "no constitutional right of the defendant was violated and that the defendant's statements to Officer Carmon were knowingly, understandingly and voluntarily made after he had waived his right to silence and right to counsel."

The pertinent testimony elicited from Trooper Carmon during voir dire supports the court's findings. Trooper Carmon, an eight year veteran, testified that defendant was apprised of his *Miranda* rights; that after being apprised of his rights defendant understood that anything he said could be used against him in a court of law; that "defendant's mental faculties were only slightly impaired"; that in his opinion defendant was capable of understanding what was said to him; that when defendant was asked whether he wished to waive his right to have an attorney present and answer questions, defendant answered responsively by advising him that he did not want a lawyer present to answer the questions; that defendant waived his rights. We hold that the findings of fact made by the trial court were supported by competent evidence in the record and are therefore binding on this appeal. We further hold that the trial court's findings supported its conclusion of law that defendant's constitutional rights were not violated when he waived his rights and voluntarily answered the questions posed to him.

[3] Defendant's final argument is that the trial court denied him a limited driving privilege because he exercised his right to a jury trial. Defendant did not present any authority in support of his argument. Moreover, we find no basis in the record for asserting that defendant was denied a limited driving privilege. On page forty (40) of the trial transcript where defendant requested limited driving privileges and where defendant's exception is noted, we found the following:

THE COURT: Well, Mr. Livermon, I will take your request under consideration. . . .

The proceedings were closed with the following colloquy between the court and defense counsel:

THE COURT: I will take your request under advisement. I don't know how I am going to rule on it.

Mr. Livermon: Thank you, sir.

(Whereupon these proceedings were closed at 2:54.)

The exception noted by defendant does not provide a basis for his Assignment of Error. There is no ruling of record made by the court for defendant to except to. Finally, we note that the revocation of a license to operate a motor vehicle is not part of, nor within the limits of, punishment to be fixed by the court wherein a defendant is tried. *Harrell v. Scheidt*, 243 N.C. 735, 92 S.E. 2d 182 (1956).

No error.

Judges ARNOLD and WHICHARD concur.