STATE OF NORTH CAROLINA
v.
ADAM ALEXANDER VARAS
No. COA08-725.
Court of Appeals of North Carolina.
Filed January 20, 2009.
This case not for publication
Attorney General Roy Cooper, by Assistant Attorney General Catherine M. Kayser, for the State.
J. Clark Fischer for defendant-appellant.
STEELMAN, Judge.
Defendant's allegations of error in the trial court's evidentiary rulings fail to demonstrate prejudice from those rulings as required by N.C. Gen. Stat. § 15A-1443(a). The trial court did not commit plain error by failing to intervene in the testimony of the investigator who took defendant's statement.

I. Factual and Procedural Background
In early October 2006, June Varas alerted authorities that her three-year-old granddaughter, T.R., had reported that defendant had hurt her "pee-pee." June Varas ("Grandmother") is defendant's adoptive mother and T.R.'s legal custodian. Defendant is T.R.'s uncle. T.R. repeated the same statement to a therapist with whomshe had an ongoing counseling relationship. T.R. was alone with defendant and his girlfriend on 27 September 2006.
On 8-9 November 2008, defendant made three statements to investigators, two of which were self-incriminating. Defendant was subsequently indicted on one count of indecent liberties and, in the alternative, first-degree sexual offense with a child.
The State's evidence at trial tended to show that T.R. was in the care of a great-aunt ("Great-Aunt") for the last week of September 2006, while Grandmother was in Atlanta helping another family member. On 27 September 2006, defendant and his girlfriend offered to babysit T.R. for an afternoon, and T.R. was in their care for 4-5 hours. Four days later, Great-Aunt took T.R. to Atlanta, where T.R. told Grandmother that defendant hurt her "pee-pee" and her "butt." Over the next month, T.R. was examined by medical professionals and her clinical exam was normal.
On the second day of trial, sitting in her grandmother's lap, T.R. was able to tell the Court her name and her age, and that the defendant's name was "Adam." T.R. denied that defendant had touched her "pee pee" or that she had ever told anyone that he had done so. Over defendant's objection, the State was permitted to offer testimony from Grandmother and a licensed clinical social worker who was T.R.'s therapist both before and after the alleged assault. Both Grandmother and the social worker testified that T.R. told them that defendant had hurt her "pee-pee."
The State also presented the testimony of the medical doctor who examined T.R. a month after the alleged assault. Dr. CynthiaBrown testified that "in 95% of cases [with] history of sexual contact, . . . the exam is normal" and that some percentage of children who disclose sexual abuse later recant because of upset to the family.
Defendant moved to suppress his statements to investigators, asserting that the incriminating 8 November statement was custodial interrogation and that the 9 November statement was induced by a promise of assistance. The court heard arguments and denied the motions. Detective Owens testified that defendant stated on 8 November 2006 that "he had rubbed [T.R.'s] vagina with her panties on for approximately four minutes." Defendant's statement, written by Detective Owen and signed by defendant, was admitted. Detective Owens further testified to defendant's 9 November 2006 50-minute interview with investigators, in which defendant first recanted his admissions from the previous evening, then admitted that "he had inserted his finger into [T.R.]'s vagina and rectum."
The defendant's motion to dismiss at the close of the State's evidence was denied. Defendant offered no evidence. The jury returned a verdict of not guilty on the charge of first-degree sexual assault and a verdict of guilty on the indecent liberties charge. The trial court entered judgment and imposed an active sentence of 19 to 23 months, from the presumptive range. Defendant appeals.

II. T.R.'s Statements to Grandmother
In his first argument, defendant contends that the trial court erred by admitting testimony regarding T.R.'s statements as an exception to the hearsay rule. We disagree.
We first note that defendant assigns error to the therapist's testimony but fails to bring forward the error by specifically addressing the therapist's testimony in his brief. Pursuant to N.C. R. App. P. 28(b)(6) (2007), that assignment of error is deemed abandoned. We thus limit our analysis to Grandmother's testimony.
Because defendant alleges non-Constitutional errors, we analyze his argument under N.C. Gen. Stat. § 15A-1443(a), which reads, in relevant part:
A defendant is prejudiced by errors relating to rights arising other than under the Constitution of the United States when there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial out of which the appeal arises. The burden of showing such prejudice under this subsection is upon the defendant.
N.C. Gen. Stat. § 15A-1443(a) (2007). A trial court's ruling on an evidentiary issue is presumed correct; even if the complaining party can demonstrate error, relief is ordinarily not granted without a showing of prejudice. State v. Herring, 322 N.C. 733, 749, 370 S.E.2d 363, 373 (1988).
At trial, the State was initially unable to establish that T.R. was a competent witness. The trial court heard voir dire testimony from Grandmother. At the conclusion of Grandmother's voir dire, defendant argued that the child was an available witness and her statements to Grandmother did not fall under any hearsay exception. The State argued that T.R.'s statements to Grandmother were admissible as hearsay exceptions under Rule 803 of the North Carolina Rules of Evidence. The court ruled that the child's statements to Grandmother were admissible either: (1) as an excited utterance under subparagraph 2; or, (2) as a residual hearsay exception under subparagraph 24 of Rule 803, finding that the statement was "more probative on the point for which it is offered than any other evidence which the State can procure through reasonable efforts."
Through Grandmother's testimony, the State established that: (1) Grandmother had had custody of her granddaughter since T.R. was six months old, because the birth mother was unable to provide for T.R.; (2) Grandmother spent the month of September 2006 attending to her daughter, T.R.'s mother, in Atlanta; (3) T.R. was with Grandmother the first three weeks of September 2006 but spent the last week with Great-Aunt in Brevard to avoid losing daycare; (4) on the evening of 1 October 2006, Great-Aunt delivered T.R. to Atlanta; and (5) T.R., although generally toilet-trained, was wearing a diaper from the car trip. Grandmother then testified that:
I said, come on, you know, let's show a movie together. She kept holding her private area and I said to her, I said, do you have to go to the bathroom, and she said, no. And being a nurse, I wanted to see, you know, what was going on. If she didn't have to use the restroom, why she kept holding there. She said she  I looked at it and it was red. I put some A&D ointment [sic]. We went back into where the movie was set up, and she announced to me, "Adam hurt my pee pee and my butt". [sic]
Defendant contends that the trial court abused its discretion in admitting T.R.'s statements to Grandmother, in part because T.R. recanted those statements at trial. Assuming arguendo that the trial court abused its discretion in the admission of Grandmother's testimony, we cannot say that such testimony was prejudicial. Herring, 322 N.C. at 749, 370 S.E.2d at 373.
On 8 November 2006, defendant voluntarily accompanied Detective Tony Owen of the Brevard Police Department to the Transylvania County Sheriff's Department, where SBI Agent Chris Smith interviewed defendant from 7:44 p.m. until shortly after 9 p.m. Subsequent to this initial interview, where defendant denied wrongdoing, defendant told Agent Smith that he "had rubbed [T.R.]'s vagina with her panties on for approximately four minutes." Detective Owen went back into the interview room, where defendant repeated the incriminating statement, which was written down by the detective and signed by defendant. Detective Owen took defendant home, where defendant agreed to speak with investigators on the following day.
On 9 November 2006, Detective Owen returned to defendant's residence, took him to the Brevard Police Department, where he advised defendant of his Miranda rights. Without invoking those rights, defendant made a second incriminating statement, in which he admitted to Detective Owen that he digitally penetrated the vagina and rectum of the child. Defendant made not one, but two, incriminating statements to investigators. The second incriminating statement, written in defendant's own hand, and signed and dated by him, was admitted into evidence and heard by the jury. In this statement, defendant confessed to digital penetration. Although defendant objected to the admission of any of these statements, he assigned error only as to the admission of statements made prior to the reading of his Miranda rights, which he contended were the result of custodial interrogation. He abandoned this assignment of error by failing to bring it forward in his brief. N.C. R. App. P. 28(b)(6). As to the confession heard by the jury, defendant has waived any objection on appeal by not assigning error to its admission. Moreover, Grandmother's testimony as to T.R.'s statements was the same as that of the social worker. Although defendant objected to the social worker's testimony at trial, he has waived those objections by failing to bring forward the related assignment of error on appeal, supra. Where the evidence admitted through Grandmother was the same as other evidence admitted at trial, defendant cannot show that a different result would have been reached without Grandmother's testimony. Id.; N.C. Gen. Stat. § 15A-1443(a).
This argument is without merit.

III. Detective Owens' Testimony
In his second argument, without challenging the admissibility of his statement to investigators, defendant contends only that the trial court committed plain error by allowing the prosecution tooffer inflammatory evidence that defendant had engaged in cross-dressing. He asserts that such evidence contaminated the trial and predisposed the jury to convict defendant on irrelevant, bad character evidence. We disagree.
Detective Tony Owen testified to defendant's statements to investigators. On re-direct, the following exchange occurred:
Q. Did Adam ever make any comments to you during this interview about engaging in cross-dressing?
A. Yes, sir, he did.
Q. Did he say that to you?
A. He said it  I can't remember if he said it to myself or Lieutenant Hutcheson.
Q. Did he say that he had done that during this occurrence?
A. No, sir.
Because defendant failed to object to the State's questions, we review this assignment for plain error. State v. Black, 308 N.C. 736, 741, 303 S.E.2d 804, 807 (1983) (adopting the plain error rule for evidentiary issues). Under this standard of review:
The proponent must show that . . . the claimed error is a fundamental error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done, . . . or the error has resulted in a miscarriage of justice or in the denial to appellant of a fair trial . . . .
State v. Curry, 171 N.C. App. 568, 574, 615 S.E.2d 327, 332 (2005) (internal quotations and citations omitted).
As discussed supra, defendant gave incriminating statements to police, including a confession to digital penetration that washeard by the jury and unchallenged on appeal. Moreover, at trial, counsel not only did not object to the State's questions, but elaborated in cross-examination, asking whether "in reference to the . . . cross-dressing, once again he indicated in that audiotape that he hadn't been doing that since he'd met his fiancée; is that correct, three years?" Under these circumstances, we cannot say that justice has not been done or that the appellant has been denied a fair trial. Curry, 171 N.C. App. at 574, 615 S.E.2d at 332.
This argument is without merit.
NO PREJUDICIAL ERROR.
Judges CALABRIA and STROUD concur.
Report per Rule 30(e).